IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| MYKEY TECHNOLOGY, INC., | * | |
|    Plaintiff, | * | |
| | * | |
|      v. | * | |
| | * | Civil Action No. 12-cv-01468-AW |
| TEFKAT LLC, *et al.*, | * | |
|    Defendants. | * | |
| | * | |
| | * | |

**************************************************************************

## MEMORANDUM OPINION

Pending before the Court is Defendant Robert Botchek's ("Botchek")'s Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. No. 16. The Court has reviewed the motion papers and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2010). For the reasons discussed below, Defendant's motion will be GRANTED.

### I. Factual and Procedural Background

This action arises out of a patent infringement suit MyKey Technology, Inc. ("MyKey") brought against TEFKAT LLC ("TEFKAT") and TEFKAT's owner, Robert Botchek. MyKey is a Delaware corporation with its principal place of business in Gaithersburg, Maryland. Compl. ¶ 1. It currently owns all of the rights, title, and interests in three patents—all of which were duly and legally issued by the United States Patent and Trademark Offices.[1] Compl. ¶ 7. TEFKAT, formerly known as Tableau, LLC ("Tableau"), is a Wisconsin corporation whose principal place of business is in Brookfield, Wisconsin. Compl. ¶ 2. Tableau was renamed TEFKAT on or around May 7, 2010, when Tableau's assets were purchased by a third party,

---

[1] U.S. Patent No. 6,813,682; U.S. Patent No. 7,159,086; and U.S. Patent No. 7,228,379.

Guidance Software. Botchek attests that prior to Tableau's sale, it was a well-capitalized company that observed corporate formalities and employed nearly 20 people at the peak of its operation. Botchek Decl. ¶¶ 15, 16. Botchek, who resides in Brookfield, Wisconsin, was the owner of Tableau and is now the owner of TEFKAT and the Senior Vice President of Guidance Software.

MyKey alleges that both TEFKAT and Botchek infringed on all three of MyKey's patents by "making, using, selling, offering for sale, and/or importing in or into the United States, without authority, products that fall within the scope of at least 1 claim of [each] patent…" Compl. ¶¶ 12–14, 19, 26. It further alleges that Botchek "induced TEFKAT's infringement" of each patent because he served as the "the moving, active, and conscious force behind [the] infringement and possessed specific intent to cause TEFKAT's infringement." Compl. ¶¶ 14, 21, 28.

In its statement of jurisdiction, MyKey claimed both defendants were subject to personal jurisdiction in this judicial district for three reasons: (1) TEFKAT and Botchek both conducted business in Maryland by shipping, distributing, selling, and advertising products in Maryland; (2) both defendants placed an infringing product into Maryland's stream of commerce; and (3) each defendant committed the tort of patent infringement within the District of Maryland. Compl. ¶ 5. On June 11, 2012, Defendant Botchek filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. No. 16. Defendant TEFKAT filed an Answer on the same day. Doc. No. 15.

Botchek contends that exercising personal jurisdiction over him would violate due process because he does not have sufficient minimum contacts with Maryland. Doc. No. 16 at 1. Botchek attests his contact with Maryland is limited to three or four trips made in his capacity as

either the President of Tableau or Senior Vice President of Guidance. Botchek Decl. ¶¶ 5, 8–9. He attests that he has never engaged in any personal business in Maryland and has never traveled to Maryland in an individual capacity. *Id.* ¶¶ 10, 11. Botchek additionally attests that his trips to Maryland in his capacity as President of Tableau were for the purpose of attending the annual Techno Forensic Trade Show in Gaithersburg and that he did not offer products for sale during either trip, in either his individual capacity or on behalf of Tableau. *Id.* ¶¶ 5–7. Finally, Botchek attests that he does not own or rent any form of property in Maryland. *Id.* ¶ 12.

MyKey contends that personal jurisdiction over Botchek is proper and requests that the Court grant it the opportunity to conduct limited jurisdictional discovery prior to ruling on Botchek's motion in order to elucidate additional contacts Botchek may have with Maryland. *See* Doc. No. 24 at 8.

**II.     Standard of Review**

Exclusive jurisdiction over appeals in patent cases lies in the Federal Circuit. 28 U.S.C. § 1935. As such, courts presiding over patent cases apply Federal Circuit law in analyzing the exercise of personal jurisdiction. *See Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 633 (E.D. Va. 2010) (citing *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2009)). "In this District, it has been held that the pleading standards set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), apply to allegations of personal jurisdiction in the same manner as they govern other complaints, although the Federal Circuit has not ruled on the issue of the applicability of *Twombly*." *C.R. Daniels, Inc. v. Naztec Intern. Group, LLC*, Civ. No. ELH–11–01624, 2011 WL 6026293, at *3 (D. Md. Dec. 2, 2011). "*Twombly* and *Iqbal* would require a plaintiff to establish a claim of personal jurisdiction 'that is plausible on its

3

face.'" *Id.* (citing *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 798 (D. Md. 2011)).

When a defendant challenges the court's personal jurisdiction in a motion to dismiss, and the court chooses to rely solely on the basis of the complaint, motions, and affidavits, the plaintiff is required only to make a *prima facie* showing of personal jurisdiction. *See Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). "However, the plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *C.R. Daniels, Inc.*, 2011 WL 6026293, at *3.

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) jurisdiction is authorized under the long-arm statute of the forum state; and (2) the assertion of jurisdiction comports with Fourteenth Amendment due process requirements. *See Elecs. For Imaging*, 340 F.3d at 1349. The Maryland Court of Appeals has held that Maryland's long-arm statute is co-extensive with the scope of jurisdiction permitted by the due process clause of the Fourteenth Amendment; therefore the statutory and constitutional inquiries merge in this case. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003). The Maryland long-arm statute, however, limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated" in the statute itself. Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). Thus, a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction." *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001); *see also Joseph M. Coleman & Assoc., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 118–19, n.2 (D. Md. 1995).

### III. Analysis

Drawing all reasonable inferences from the proof submitted in Plaintiff's favor, Botchek's connections to Maryland are insufficient to find personal jurisdiction here. As discussed below, all of Botchek's connections appear to have been in a professional rather than individual capacity. All of the contacts alleged by Plaintiff involve Botchek's actions as President of Tableau or Senior Vice President of Guidance. Plaintiff has not alleged any facts suggesting that Botchek reached out to Maryland in an individual capacity. Because Plaintiff has not made a *prima facie* showing of Botchek's sufficient minimum contacts with Maryland, finding personal jurisdiction here would violate traditional notions of fair play and justice.

A. Long Arm Jurisdiction

It is appropriate to begin our personal jurisdiction inquiry by considering Maryland's long-arm statute. *See Dring*, 423 F. Supp. 2d at 545 (consideration under the long-arm statute must remain a separate component of the analysis). Plaintiff alleges that personal jurisdiction over Botchek is proper based on three subsections of Maryland's long-arm statute, § 6-103(b)(1), § 6-103(b)(3), and § 6-103(b)(4). At the motion to dismiss stage, Plaintiff has the burden of making out a *prima facie* case for personal jurisdiction under at least one of these subsections.

1. Personal Jurisdiction under § 6-103(b)(1)

Section 6-103(b)(1) authorizes jurisdiction when a person "[t]ransacts any business or performs any character of work or service in the state." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). "Transacting business pursuant to subsection (b)(1) 'requires actions that culminate in purposeful activity within the state.'" *Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F. Supp. 2d 684, 689 (D. Md. 2007) (quoting *Bahn v. Chi. Motor Club Ins. Co.*, 634 A.2d 63, 67 (Md. 1993)). "Subsection (b)(1) does not require the defendant to have been present physically in Maryland." *Capital Source Fin., LLC*, 520 F. Supp. 2d at 689 (citations omitted). In *Bahn*,

5

for example, the court found that the nonresident defendant "transacted business" within the meaning of Maryland's long-arm statute because it mailed notices to the Maryland plaintiffs, contracted with the Maryland plaintiffs, and received payments from Maryland. 634 A.2d at 67–68. "An essential factor in determining whether business transactions give rise to specific jurisdiction is whether the defendant initiated the contact" with the Plaintiff in the forum state. *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 766 (D. Md. 2009).

While MyKey alleges that Botchek transacted business in Maryland when he directed TEFKAT to sell and offer for sale infringing products in Maryland, it has made nothing more than conclusory, legal allegations to support this contention. *See* Doc. No. 24 at 4. There have been no factual allegations regarding when, where, and to whom Botchek directed TEFKAT to sell the infringing products in Maryland. There have been no factual allegations establishing that Botchek sent anyone to Maryland or even engaged in telephonic communications directed to Maryland in order to conduct or solicit business. There have also been no factual allegations establishing that Botchek sent mail to Maryland or initiated business-related contact in Maryland in any way. On the contrary, Botchek has made several uncontroverted statements to the effect that he has never engaged in any business in Maryland either in a professional or personal capacity. Because MyKey's allegations consist of little more than a formulaic recitation of Maryland's long-arm statute, they are insufficient under *Twombly*'s pleading standard. As such, personal jurisdiction over Botchek cannot be established under Section 6-103(b)(1).

    2. <u>Personal Jurisdiction under § 6-103(b)(3)</u>

Section 6-103(b)(3) of the long-arm statute authorizes jurisdiction over an out-of-state individual when he or she "[c]auses tortious injury in the State by an act or omission in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3). As stated, this subsection requires that

the injury-causing acts actually occur in the state attempting to exercise personal jurisdiction. *See Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996). Therefore, MyKey must make sufficient factual allegations establishing that Botchek's injury-causing acts occurred in Maryland.

While MyKey may be able to establish that Botchek caused injury in Maryland, it has not pleaded facts suggesting that Botchek's injury-causing acts occurred in Maryland. As a resident of Wisconsin, Botchek has travelled to Maryland on only a handful of occasions, and none of these visits appear related to the basis of this action. Botchek, on the other hand, asserts that when he travelled to Maryland in his capacity as President of Tableau, it was only for the purpose of attending the annual Techno Forensics Trade Show. He further claims he did not sell, individually or on behalf of Tableau, any products during his trip. Although we must view the facts in the light most favorable to MyKey, MyKey has not made *any* factual allegations to refute Botchek's assertions or support the claim that Botchek's injury-causing acts occurred in Maryland. As such, § 6-103(b)(3) of Maryland's long-arm statute cannot be the basis for personal jurisdiction over Botchek.

3. Personal Jurisdiction under § 6-103(b)(4)

Section 6-103(b)(4) supplies a basis for jurisdiction over any person who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State …[.]" Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4). "It is not necessary that the doing or soliciting of business, the engagement in another persistent course of

conduct, or the derivation of substantial revenue have any relationship to the alleged acts giving rise to the suit." *Sibert v. Flint*, 564 F. Supp. 1524 (D. Md. 1983) (citations omitted). MyKey alleges that personal jurisdiction over Botchek is proper because Botchek caused tortious injury in Maryland by inducing TEFKAT to infringe MyKey's patents. It further alleges jurisdiction is proper because Botchek regularly conducts or solicits business in Maryland. While MyKey has made this series of claims to demonstrate the court's jurisdiction over Botchek, it has provided no *factual* allegations to prove its contentions. MyKey cites to Botchek's declaration to assert that Botchek travelled to Maryland to "conduct business" on behalf of Tableau. The declaration, however, states that Botchek traveled to Maryland to attend a trade show and left without selling any product either in a professional or personal capacity. *See* Botchek Decl. ¶¶ 6, 7. Even if the Court were to accept MyKey's characterization of Botchek's activities, Botchek's two visits to Gaithersburg by no means amount to "regularly" conducting or soliciting business in Maryland.

MyKey further claims that Botchek's acts of inducement independently subject him to personal jurisdiction under § 6-103(b)(4). While Botchek may be individually liable for inducement, the "potential for personal liability of a corporate officer […] is no substitute for a determination of whether the Court may exercise personal jurisdiction over that officer." *Amhil Enter. Ltd. v. Wawa, Inc.*, No. HAR 93–1349, 1994 WL 750535, at *4 (D. Md. Dec. 16, 1994). The officer still has to meet the statutory and due process requirements for personal jurisdiction. *Id.* Here, MyKey has failed to plead sufficient facts to establish that Botchek regularly conducts business in Maryland, engages in any other persistent form of conduct in Maryland, or derives substantial revenue from goods or services used in Maryland. As a result, personal jurisdiction under § 6-103(b)(4) of Maryland's long-arm statute is improper.

  B. <u>Constitutional Minimum Contacts</u>

Even if subsections 6-103(b)(1), (3), or (4) had been found to supply valid bases for jurisdiction, Botchek's contacts with Maryland are so limited that finding personal jurisdiction here would violate his basic due process rights. A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). Courts have recognized two types of personal jurisdiction: general and specific jurisdiction. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Because MyKey does not contend that the Court has general personal jurisdiction over Botchek, the Court's inquiry will focus on specific jurisdiction.

Specific jurisdiction is appropriate when: (1) "the defendant purposefully directed its activities at residents of the forum;" (2) the claim "arises out of or relates to the defendant's activities with the forum;" and (3) the "assertion of personal jurisdiction is reasonable and fair." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (internal quotation omitted).

It appears that Plaintiff seeks to hold Botchek liable for acts he performed in his capacity as owner of TEFKAT and President of Tableau. Botchek contends that jurisdiction cannot be established based on actions taken in his corporate capacity absent piercing the corporate veil. Under 35 U.S.C. § 271(b), corporate officers may be found personally liable for inducing infringement where the officer actively aided and abetted the corporation's infringement, without needing to pierce the corporate veil. *See Amhil*, 1994 WL 750535, at *3; *see also Planet Techs. v. Planit Tech. Grp, LLC*, 735 F. Supp. 2d 397, 404 n.2 (D. Md. 2010) (finding that the court

9

need not pierce the corporate veil to establish personal liability over a corporate officer where the officer committed intentional torts in his corporate capacity).[2]

As the Court explained in *Amhil*, however, "[t]he potential for personal liability of a corporate officer … is no substitute for a determination of whether the Court may exercise personal jurisdiction over that officer." 1994 WL 750535, at *4. Regardless of whether Botchek could be held personally liable for the alleged infringement, "personal jurisdiction must be based on an individual's personal contacts with or purposeful availment of the forum state." *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp. Inc.*, 299 F. Supp. 2d 505, 513 (2004).

Even if Plaintiff were to satisfy the provisions of the Maryland long-arm statute, Botchek's personal contacts with Maryland fall far below the type of minimum contacts required for due process. MyKey has not made a single factual allegation that Botchek reached into Maryland in a personal capacity and availed himself of the privilege of conducting activities in Maryland, other than his attending Maryland trade shows on isolated occasions. Moreover, Botchek attests that his two visits to Maryland during his time as President of Tableau were made in a professional capacity, and that he has never conducted any business in Maryland in either his individual or corporate capacity, offered for sale or sold products in the State of Maryland, or held any property, tangible or intangible, within Maryland. MyKey has not countered these claims with any factual allegations suggesting that Botchek did in fact conduct business on either of his Maryland trips.

Additionally, MyKey does not argue that Botchek was using the corporate form of Tableau or TEFKAT as a shield and that the corporate veil may be pierced for jurisdictional

---

[2] The Court looks to Fourth Circuit law on this issue because "[t]he Federal Circuit … has not preempted the law of the regional circuits in determining whether this Court may exercise personal jurisdiction over an individual corporate officer for corporate actions." *Amhil*, 1994 WL 750535, at *3.

purposes in this case. *See Amhil*, 1994 WL 750535, at 4 ("[w]here the individual officer is not himself subject to the state long-arm statute, the Court may pierce the corporate veil and permit the assertion of personal jurisdiction over the officer if he conducts personal activities while using the corporate form as a shield.") (citation omitted). As such, all of Botchek's contacts with Maryland are insufficient for establishing specific jurisdiction.

      C.    <u>Jurisdictional discovery</u>

Finally, Plaintiff requests that, before the Court rules on this motion, it be allowed to conduct limited jurisdictional discovery to uncover other contacts Botchek may have with Maryland. "Jurisdictional discovery is not warranted when 'the pleadings contain [ ] no specific facts that could establish the requisite contacts with Maryland.'" *Haley*, 775 F. Supp. 2d at 801 (citations omitted). This Court has "'broad discretion' in its resolution of discovery problems" and has previously concluded "that jurisdictional discovery 'cannot simply be a fishing expedition …[.]'" *Id.* (citations omitted).

As described above, MyKey has made virtually no factual allegations regarding Botchek's individual contacts with Maryland. The bulk of its contentions rest on the contact Botchek made with Maryland in a professional capacity, which cannot be the basis for personal jurisdiction in this judicial district absent piercing the corporate veil. Without at least some factual allegations to guide its discovery, Plaintiff's request would essentially entitle it to a fishing expedition. Due to the absence of allegations that would provide a sufficient basis for piercing the corporate veil, Plaintiff is not entitled to jurisdictional discovery.

**IV.**    **CONCLUSION**

For the foregoing reasons, Botchek's Motion to Dismiss for Lack of Personal Jurisdiction will be GRANTED, and Botchek will be dismissed from this action. The Court will issue an Order to this effect.

August 7, 2012  /s/
Date  Alexander Williams, Jr.
  United States District Judge